**Brian GORNICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00106–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted May 22, 1997.

Decided June 11, 1997.

Gary L. Waite, Paris, for appellant.

Walt Sears, Jr., County Attorney of Franklin County, Mount Vernon, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Brian Gornick was convicted of criminal trespass [1] onto the property of Sarah Armstrong. Trial was to a jury. Gornick con-

tends in his second point of error that the trial court erred in denying his request to instruct the jury on his defensive theory. We agree and will reverse and remand for a new trial. Because we find this issue dispositive, we do not reach Gornick's remaining points of error.

Gornick's conviction is the latest incident in a long running dispute between Sarah Armstrong and Gornick regarding the true boundary between their adjacent properties. Both tracts are located in Sandy Acres Estates in Franklin County. The plat of Sandy Acres Estates, which the State placed in evidence, shows five individual lots sequentially numbered one through five. Each lot is bounded by an unnamed body of water to the west and a public road on the east. Armstrong owns Lot 1. She purchased the lot about fifteen years ago.

To the immediate north of Armstrong's lot is an area designated as a "picnic area" containing a pond, fishing pier, and boat dock. Gornick purchased this property, consisting of .699 acres, in November 1993.[2] Gornick's deed and a survey of the parcel were filed with the Franklin County clerk. Armstrong contends that the sale to Gornick is defective because it was represented to persons purchasing property in Sandy Acres Estates that the area was intended to be "public land." [3]

The survey shows that a chain link fence, erected by Armstrong, encroaches on Gornick's property. Gornick also discovered that Armstrong had placed "construction debris and a junk car and old motor" on the .699 acres. He asked Armstrong to remove the items but she refused, contending that he did not own the property.

Gornick removed the chain link fence in 1994 and also removed the "junk car" from the property. His removal of the vehicle caused him to encroach onto the undisputed

---

1. Tex Penal Code Ann. § 30.05 (Vernon 1994).

2. According to the deed on file, Gornick purchased the parcel for $1.00 and an exchange of real estate of equal value.

3. Armstrong, as well as other Sandy Acres Estates residents, have filed a civil suit against Brian and Cynthia Gornick and Darrell and Eve-

lyn Rhoades regarding the sale of the property. The suit contends that each of the plaintiffs purchased property in reliance on Rhoades' representation that the area purchased by Gornick was dedicated for public use, as shown by the picnic area, pond, and boat dock in the filed plat map for Sandy Acres Estates.

part of Armstrong's property. Armstrong had Gornick arrested and charged with criminal trespass in connection with these actions. Gornick entered a plea of no contest and also signed a judicial confession admitting that he had criminally trespassed on Armstrong's property after receiving notice that entry was forbidden or being told to leave but refusing to do so.

The alleged criminal trespass involved in this appeal arose from a conversation between Gornick and Mark Davis. On April 27, 1996, Mark Davis was cutting trees on Armstrong's property. Armstrong had hired Davis to cut and remove several dead trees. Davis testified that Gornick walked onto Armstrong's property and asked him several questions, such as whether Davis had purchased the property and what Armstrong planned on doing with the property. The conversation lasted about five minutes. Gornick then returned to his property. Davis told Armstrong about the incident, and Gornick was subsequently arrested.

Gornick contends that the trial court erred in denying his request to include instructions on his defensive theory in its jury charge. We agree.

■■■ The standard of review for alleged errors in the jury charge depends on whether the defendant properly objected. If a proper objection was raised, reversal is required if the error "is calculated to injure the rights of the defendant." *Almanza v. State,* 686 S.W.2d 157, 171, (Tex.Crim.App.1984) (opinion on reh'g). In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* If a proper objection was not made at trial, however, the conviction can only be reversed if the error resulted in egregious harm. *Id.* In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record. *Id.*

■■■ An accused has the right to have the jury instructed on any lesser included offense or any defensive issue raised by the evidence, whether the evidence is weak or strong, unimpeached or contradicted, and regardless of

what the trial court or appellate court may think of its credibility. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996); *Aguilar v. State,* 914 S.W.2d 649, 650 (Tex.App.— Texarkana 1996, no pet.); *see also Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim.App. 1993); *Woodfox v. State,* 742 S.W.2d 408, 409 (Tex.Crim.App.1987); *Gibson v. State,* 726 S.W.2d 129, 132 (Tex.Crim.App.1987) (op. on reh'g); *Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App. [Panel Op.] 1978).

Gornick's defense rested on the premise that his conversation with Davis took place at a point on the property where the ownership was disputed between him and Armstrong. If the conversation with Davis did take place while Gornick was standing on the portion of the land where the title was in dispute, Gornick would not be guilty of a criminal trespass. *Hann v. State,* 771 S.W.2d 731 (Tex. App.—Fort Worth 1989, no pet.); *see also Allsup v. State,* 62 S.W. 1062 (Tex.Crim.App. 1901).

■■■ The gist of the offense of criminal trespass is a purposeful act of trespass on land not one's own. The statute creating the offense does not criminalize acts that are undertaken in good faith as the proper exercise of ownership under a claimed right, for in such a case there is no criminal intent. If a person is acting under a bona fide claim of right, albeit ill-founded, he is not guilty of a crime. If the act is not in fact legally justified, it may constitute a trespass that can be redressed by civil remedies, but it is not a crime. *Hann v. State, supra; Allsup v. State, supra; see also, e.g., Mullinax v. State,* 756 S.W.2d 40 (Tex.App.—Texarkana 1988, no pet.).

Gornick objected to the proposed jury charge and requested that the court include the following instruction:

You are further instructed that in determining the guilt or innocence of the Defendant, Brian Gornick, in this cause that if you find that a good faith dispute existed between the Defendant and the complaining witness, Sarah Armstrong, regarding Brian Gornick's right of access to the subject property, you will by your verdict find the Defendant, Brian Gornick, not guilty.

The court overruled Gornick's objection and refused to submit the requested instruction.

We must determine whether there was any evidence to support the submission of this defensive issue to the jury. Gornick's own testimony raised the issue of where the alleged trespass occurred.

Gornick testified that in June 1996, he hired John McNutt to survey his property in order to determine the exact location of the boundary between Armstrong's property and his tract. The survey showed a fence, apparently built by Armstrong, encroaching on his property.[4] Gornick testified that the fence encroached approximately thirty feet onto his property.

Gornick testified he saw an individual, later identified as Mark Davis, cutting trees on the other side of the fence. He explained that he wanted to find out what Davis was doing and whether Armstrong had sold her property, so he walked around the encroaching fence to talk to Davis. Gornick said he only walked "a couple of steps" past the weeds directly adjacent to the fence before engaging Davis in a "long distance" conversation. His conversation with Davis lasted about five minutes.

McNutt testified that he did a survey determining the proper boundary between Gornick's and Armstrong's properties. He said he told Gornick where the true boundary was located, and he testified that the fence encroached on Gornick's property. He also stated that he placed survey stakes to mark the proper boundary between the properties. Armstrong admitted that she removed the survey stakes put in place by McNutt.

The State incorrectly asserts that Gornick's requested instruction would have required jurors to find Gornick not guilty even if they believed Gornick trespassed on the southern half of Armstrong's property. This assertion overlooks the requested instruction's plain language referring to "Brian Gornick's right of access to the *subject property* " (emphasis added). The subject property refers to the situs of the offense. The evidence shows that Gornick's trespass could have occurred either within the area of disputed property or outside the disputed area on the southern half of Armstrong's lot. Contrary to the State's assertion, jurors could still convict Gornick of criminal trespass if they believed the offense occurred outside the disputed property area.

If any evidence raises the issue of a defensive theory, it must be included in the court's charge. *Aguilar v. State,* 914 S.W.2d at 650, and cases there cited. The evidence clearly raised Gornick's defensive theory that the trespass occurred within the area of disputed property. The requested instruction was an accurate statement of the law. The trial court should have included the requested instruction in its jury charge. *See Campbell v. State,* 626 S.W.2d 91 (Tex.App.—Corpus Christi 1981, no pet.). Failure to do so constitutes error.

Finding error in the court's charge, however, merely begins the inquiry. *Almanza v. State,* 686 S.W.2d at 174. We must now determine whether the resulting harm requires reversal. *Id.* at 171. Gornick raised a proper objection at trial; thus, reversal is required if this error was calculated to injure Gornick. *Almanza v. State,* 686 S.W.2d at 171; *Aguilar v. State,* 914 S.W.2d at 651. The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994). Gornick has the burden of proof to persuade this court that he suffered some actual harm as a consequence of the charging error. *Id.; see also LaPoint v. State,* 750 S.W.2d 180, 191 (Tex.Crim.App. 1986) (op. on reh'g); *Belyeu v. State,* 791 S.W.2d 66, 75 (Tex.Crim.App.1989).

The trial court's failure to properly instruct the jury harmed Gornick because the jurors were not told that they could acquit Gornick if they concluded that he was in the disputed area when he engaged in conversation with Davis. Gornick questioned Sarah Armstrong, Mark Davis, Lynn Swanner, and

---

**4.** This is not the same fence referenced in the 1993 survey. Gornick removed that fence in 1994. In June 1996, another fence was erected on Gornick's property. The fence separated Armstrong's and Gornick's properties. Gornick testified that he believed the fence was erected by Armstrong.

John McNutt about the property dispute. Gornick also testified about the dispute.

The charging error affected the very basis of Gornick's defense and made the case for conviction more persuasive. This not only constitutes evidence of some harm, but is also consistent with examples of egregious harm. *See, e.g., Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991); *Almanza v. State,* 686 S.W.2d at 172; *Hall v. State,* 937 S.W.2d 580, 583 (Tex.App.—Texarkana 1996, pet. ref'd).

For the reasons stated, we reverse the judgment and remand this cause for a new trial.